775 P.2d 1137

**The STATE of Arizona, Appellee,**

v.

**Timothy JUAREZ, Jr., Appellant.**

**No. 2 CA–CR 88–0074.**

Court of Appeals of Arizona, Division 2, Department A.

Oct. 4, 1988.

Redesignated as Opinion and Publication Ordered Nov. 2, 1988.

Review Granted Feb. 24, 1989.

Robert K. Corbin, Atty. Gen. by Eric J. Olsson, Tucson, for appellee.

Robert Arentz, Cochise County Public Defender by Wallace R. Hoggatt and Joseph P. DiRoberto, Bisbee, for appellant.

## OPINION

PER CURIAM.

Appellant was charged by indictment with a total of six counts, three counts involving driving under the influence of intoxicating liquor and three counts involving driving while there was .10 percent or more by weight of alcohol in his blood, all class 5 felonies, under A.R.S. §§ 28–692.-02(A)(1), –692.02(A)(2) and –692.02(A)(3). A jury found him guilty as charged and the court sentenced appellant to concurrent, maximum prison terms of four years. The

court found as aggravating circumstances appellant's eight prior DUI convictions and the fact that he consciously posed a risk to others by deciding to drive while intoxicated and without a license. Additionally, the court pointed out that pursuant to one of appellant's prior convictions, he had been sentenced to two years in prison.

Appellant raises two issues on appeal. He argues that the trial court erred in entering judgments convicting him of more than two counts as charged, and he further contends that the court erred in refusing to dismiss the charges because of the arresting officer's interference with his right to counsel.

Appellant was arrested on July 14, 1987, just before 7:00 p.m. in Cochise County near the Arizona–New Mexico border. Department of Public Safety Officer Matthew Janton stopped appellant in his truck after observing that the truck had only one headlight operating and was traveling four miles over the posted 65 mile-per-hour speed limit. After the stop, as Officer Janton approached the driver's window, he smelled an odor of intoxicants. Appellant stated, "I am under arrest," and when asked why he said so, explained to the officer that he had not yet gotten his driver's license back. Offered the choice of having his truck towed or recovered by family members, appellant requested that the officer telephone appellant's father. After waiting approximately one hour, Officer Janton finally called for a tow truck and, when the tow truck arrived, Janton and the appellant left for Willcox, the closest police station with an intoxilyzer machine. Officer Janton testified that they arrived at the Willcox police department at approximately 8:40 p.m., and he immediately began the mandatory 20–minute observation period prior to administering the intoxilyzer test. In requesting appellant's consent to submit to the intoxilyzer, Officer Janton read the following:

Arizona law requires you to submit to a breath test to determine the alcoholic content of your blood. If you refuse to submit to this test, your license or permit to drive will be suspended for twelve months. You are therefore requested to submit to a breath test.

Unless you expressly agree to take the test, I will consider you are refusing. You will not be allowed to call an attorney before deciding if you will take this test. However after you take the test, you may then telephone an attorney or friend if you choose.

If you decide not to take the test, you will still be allowed to telephone an attorney, but your refusal will still result in suspension of your license or permit to drive for twelve months.

Will you submit to the test I have offered?

The intoxilyzer test was administered at 9:05 p.m., more than two hours after appellant's arrest, and showed a blood alcohol content of .179 percent.

Appellant has numerous prior drunk driving convictions. The most recent, in 1983, was a conviction and sentence to a two-year prison term for driving while under the influence of alcohol while his license was suspended, revoked or refused, a class 5 felony. He had six other misdemeanor drunk driving convictions between 1971 and 1983.

The indictment charged appellant with two counts—driving under the influence and driving with a blood alcohol content of .10 percent or more—under each of the subsections of A.R.S. § 28–692.02, which defines certain felony drunk driving offenses. Specifically, the statute provides as follows:

A. A person is guilty of a class 5 felony if the person does any of the following:

1. Commits a violation of § 28–692 while the person's operator's or chauffeur's license is suspended, cancelled, revoked or refused or in violation of a restriction placed on an operator's or chauffeur's license as a result of violating § 28–692.

2. Commits a *second violation of* § 28–692 and has not applied for or obtained an Arizona operator's or chauffeur's license within five years preceding the violation.

3. Commits a second violation of § 28–692 and has not reapplied for or obtained an Arizona operator's or chauf-

feur's license after suspension; cancellation, revocation or refusal of a license pursuant to § 28–691 or 28–692 or pursuant to an act committed in another state which if committed in this state would be a violation of § 28–691 or 28–692.

At trial, the parties read the following stipulation to the jury:

> THAT ON JULY 14, 1987, THE DEFENDANT'S LICENSE WAS REVOKED; THAT THE REVOCATION WAS THE RESULT OF A VIOLATION OF ARIZONA REVISED STATUTES SECTION 28–692; THAT ON JULY 14, 1987, THE DEFENDANT KNEW THAT HIS LICENSE WAS REVOKED; AND HE HAD NOT REAPPLIED FOR OR OBTAINED AN ARIZONA OPERATOR'S OR CHAUFFEUR'S LICENSE; HE HAD NOT APPLIED FOR OR OBTAINED AN OPERATOR'S LICENSE WITHIN THE PREVIOUS FIVE YEARS OF THAT DATE, JULY 14, 1987; AND THAT HE HAS A PRIOR CONVICTION FOR A VIOLATION OF ARIZONA REVISED STATUTE SECTION 28–692.

On appeal, counsel acknowledges that the issue now raised by appellant was not raised in the trial court. In fact, as we have just quoted, appellant stipulated to the operative facts of all three violations specified in A.R.S. § 28–692.02(A)(1), (2) and (3). There is nothing in the record to indicate the date that appellant's license had been suspended. The only facts before us are those stipulated in the record: that appellant's license was under suspension on the date of the offense, that he had not reapplied for or obtained the license after suspension, and that he had not applied for or obtained a license within the five years preceding the date of the offense. A single consolidated judgment and concurrent sentences have been imposed. The trial court specifically noted that A.R.S. § 13–116 required a single punishment for the six felonies arising from the single occasion. In the future, the convictions entered in this case will be treated as one offense for purposes of enhancement. *See* A.R.S. §§ 13–604(H), 28–692.01(E) and (F). We find no grounds for dismissal of all but the charges under § 28–692.02(A)(1).

Appellant next contends that the form used by the DPS officer to request that he submit to the intoxilyzer test interfered with his right to counsel. As we quoted above, that form provides in pertinent part, "You will not be allowed to call an attorney before deciding if you will take this test." There is no evidence of any request by appellant to speak with an attorney. In *Kunzler v. Superior Court,* 154 Ariz. 568, 744 P.2d 669 (1987), our supreme court stated that it is only when the exercise of the right to counsel "will hinder an ongoing investigation that the right to an attorney must give way in time and place to the investigation by the police." *Id.* at 569, 744 P.2d at 670. In this case, the delay caused by arranging to remove appellant's vehicle followed by the drive to the Willcox police station followed immediately by the 20–minute observation period and then the intoxilyzer test presented a situation where there was no reasonable opportunity to interrupt the investigation once the officer and appellant arrived at the station.

In *State v. Superior Court,* 154 Ariz. 574, 744 P.2d 675 (1987), the defendant was arrested and was read portions of the implied consent law including the statement, "You will not be allowed to call an attorney before deciding if you will take this test." The supreme court noted in a footnote:

> This may have been bad advice. *See Kunzler v. Superior Court,* 154 Ariz. 568, 744 P.2d 669 (1987). However, since the issue is not raised by defendant, we do not consider it at this time.

154 Ariz. at 575 n. 1, 744 P.2d at 676 n. 1. We agree with Justice Cameron's observation that the statement read to appellant in this case may very well have been bad advice. However, we do not find that appellant has been prejudiced. First, he did not ask to speak to an attorney after he was arrested and informed of his *Miranda* rights, including the right to counsel, nor did he request an attorney during the lengthy delay between his arrest and arrival at the Willcox Police Station. Second, once appellant and Officer Janton arrived at the station, their time was occupied in preparation for and administration of the intoxilyzer test. Any request by appellant

to speak to an attorney during that time would have interfered with the investigative process.

We have reviewed the record for fundamental error and, finding none, we affirm the judgment of convictions and the sentence imposed.